## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### CENTRAL DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 09-45047-MSH |
| PATRICIA A. LAMBERT | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| BARRY UNGER | ) | |
| | ) | |
| Plaintiff | ) | Adversary Proceeding |
| | ) | No. 10-04030 |
| v. | ) | |
| | ) | |
| PATRICIA A. LAMBERT | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

### MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In 2001 Barry Unger filed an action in Middlesex County Superior Court against his former attorney, Patricia Lambert, seeking to recover approximately $230,000. Mr. Unger maintained that he had loaned Ms. Lambert the funds. Ms. Lambert contended that only a portion of the $230,000 was a loan, that she had repaid the loan and that the balance was transferred to her by Mr. Unger for investment purposes. Mr. Unger's complaint included counts for breach of contract, misrepresentation and fraud, breach of fiduciary duty and violation of Mass. Gen. Laws ch. 93A ("Chapter 93A"). Following a seven-day trial, the jury determined by special verdict that an attorney-client relationship had existed between Mr. Unger and Ms. Lambert; that Ms. Lambert had violated her ethical duties as Mr. Unger's attorney; and that Ms. Lambert had made material

1

misrepresentations with respect to Mr. Unger's transfer of money to her upon which misrepresentations Mr. Unger had relied to his detriment. The jury found that of the $230,000 transferred, $55,000 was an investment and the balance was a loan, and that the outstanding loan balance with interest totaled $170,488.16.

The superior court judge, reserving for his own determination whether Ms. Lambert had violated Chapter 93A, determined that Ms. Lambert's "false promises," "misrepresentations," and "breach of fiduciary duty" all constituted "willful and knowing violations of G.L. c. 93A." The judge awarded Mr. Unger Chapter 93A damages of $240,717.80, double his attorney fees. The court entered judgment against Ms. Lambert in the sum of $566,615.07. The judgment consisted of the $170,488.16 jury award, $130,409.11 of interest on the jury award, $240,717.80 in Chapter 93A damages and $25,000 in costs. Although the Superior Court judge issued his order for judgment on March 12, 2007, the clerk did not docket the order until March 27, 2008, over a year later. Ms. Lambert thereupon filed a notice of appeal to the Massachusetts Appeals Court.

On November 27, 2009, prior to the Appeals Court's ruling on the appeal, Ms. Lambert filed a petition under Chapter 13 of the United States Bankruptcy Code (11 U.S.C. § 101, *et seq.*), commencing the main case. Her case was converted to Chapter 7 on May 15, 2011. On March 8, 2010, Mr. Unger initiated this adversary proceeding against Ms. Lambert on a three-count complaint—count 1 for nondischargeability of his state court judgment under Bankruptcy Code § 523, count 2 for injunctive relief, and count 3 for denial of discharge under Bankruptcy Code § 727.

On September 3, 2010, the Massachusetts Appeals Court issued its ruling, affirming in part and reversing in part the superior court judgment. The Appeals Court affirmed the jury verdict,

including the jury's finding that Ms. Lambert had misrepresented to Mr. Unger material facts upon

which he reasonably relied to his detriment. The Appeals Court also affirmed the judge's ruling

that Ms. Lambert's conduct had violated Chapter 93A, but reversed the court's calculation of

damages and remanded the case to the superior court solely for a determination of Mr. Unger's

attorney's fees and costs related to pursuing the Chapter 93A claim.

In this adversary proceeding, Mr. Unger has now moved for summary judgment with

respect to count 1 of his complaint on the basis that the debt owed to him by Ms. Lambert is

nondischargeable under either Bankruptcy Code § 523(a)(2)(A) or § 523(a)(6). Section

523(a)(2)(A) makes nondischargeable "any debt . . . for money, property, services, or an extension,

renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false

representation, or actual fraud, other than a statement respecting the debtor's or an insider's

financial condition." Section 523(a)(6) makes nondischargeable "any debt . . . for willful and

malicious injury by the debtor to another entity or to the property of another entity."

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue of a material fact and that the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 65(c), made applicable by Fed. R. Bankr.

P. 7056. A "genuine" issue is one supported by such evidence that "a reasonable jury, drawing

favorable inferences," could resolve it in favor of the nonmoving party. *Triangle Trading Co. v.*

*Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co., Inc.*, 76

F.3d 413, 427 (1st Cir. 1996)). "Material" means that a disputed fact has "the potential to change

the outcome of the suit" under the governing law if the dispute is resolved in favor of the

nonmovant. *McCarthy v. Nw. Airlines, Inc.* 56 F.3d 313, 314-15 (1st Cir. 1995). The moving party

3

bears the initial responsibility of informing the court of the basis for its motion, and "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmoving party, in responding to a motion for summary judgment, "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial. Fed. R. Civ. Pro. 56(e)(2).

In bringing this motion for summary judgment, Mr. Unger relies on the *res judicata* effect of the judgment in the Massachusetts superior court. When determining the preclusive effect of a state court judgment, "a federal court must give to a state court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 80-81 (1984). In this case, as the Middlesex County Superior Court rendered the original judgment, Massachusetts law governs the preclusive effect of that judgment. *See McCrory v. Spigel*, *(In re Spigel)*, 260 F.3d 27, 33 (1st Cir. 2001).

Under Massachusetts law, the term "res judicata" encompasses both claim preclusion and issue preclusion. *Kobrin v. Bd. of Reg. in Medicine*, 832 N.E.2d 628, 634 (Mass. 2005). The U.S. Court of Appeals for the First Circuit in *In re Sonus Networks, Inc.* succinctly articulated the distinction between these doctrines:

> Claim preclusion is based on the idea that the precluded litigant had the opportunity and incentive to fully litigate the claim in an earlier action, so that all matters that were or could have been adjudicated in the earlier action on the claim are considered to have been finally settled by the first judgment. In contrast, issue preclusion does not reach issues unless they were actually litigated and decided in

4

the first litigation; however, it bars relitigation of those issues even in the context of
a suit based on an entirely different claim.

*In re Sonus Networks, Inc., Shareholder Derivative Litigation*, 499 F.3d 47, 56 (1st Cir. (Mass.)

2007) (citing *Kobrin*, 832 N.E.2d at 634). Here Mr. Unger's assertion of res judicata implicates

issue preclusion.

It is well settled that the doctrine of issue preclusion, also called collateral estoppel, applies

in bankruptcy proceedings. *See Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). Determining

whether Mr. Unger's claim of issue preclusion is efficacious requires four separate inquiries: first,

whether there was a final judgment on the merits in the superior court; second, whether Ms.

Lambert was a party (or in privity with a party) to the superior court matter; third, whether the

issues that were decided in the superior court are identical with the ones presented in this action;

and fourth, whether the issues decided in the superior court were essential to the judgment in that

action. *Alba v. Raytheon Co.*, 809 N.E.2d 516, 521 (Mass. 2004). I will take each inquiry in turn.

First, there was a final judgment on the merits in the superior court between Mr. Unger and

Ms. Lambert. A final judgment is one where "the parties were fully heard, the judge's decision is

supported by a reasoned opinion, and the earlier opinion was subject to review or was in fact

reviewed." *Jarosz v. Palmer*, 766 N.E.2d 482, 489 (Mass. 2002) (quoting *Tausevich v. Bd. of

Appeals of Stoughton*, 521 N.E.2d 385, 387 (Mass. 1988)). In *O'Brien v. Hanover Ins. Co.*, the

Massachusetts Supreme Judicial Court adopted the majority rule that "a trial court judgment is

final and has preclusive effect regardless of the fact that it is on appeal." *O'Brien v. Hanover Ins.

Co.*, 692 N.E.2d 39, 44 (Mass. 1998).[1] The parties here, Mr. Unger and Ms. Lambert, endured a

---

[1] In following the majority rule on final judgments, the SJC cites a case from the D.C. Circuit
Court of Appeals that addresses the concerns litigants may have if the underlying final judgment is
reversed on appeal:

seven-day state court jury trial, resulting in a special jury verdict outlining each of the jury's

findings; an order of the trial court adopting those findings and providing separate findings on the

Chapter 93A count; and a ruling from the Massachusetts Appeals Court affirming the trial court's

judgment on all points except the calculation of Chapter 93A damages. Ms. Lambert contends that

there is no final judgment because the case has been remanded to the superior court. However, the

Appeals Court limited its remand order only to the calculation of damages on the Chapter 93A

count. The Appeals Court affirmed the trial court's judgment and damage award associated with

the counts for breach of contract, misrepresentation, breach of duty as well as the underlying

judgment that Ms. Lambert had violated Chapter 93A. Therefore, the state trial court's judgment is

final for purposes of issue preclusion.

As to the identity of the parties—the same two parties who litigated in state court are the

parties before me in this adversary proceeding.

The third inquiry in establishing issue preclusion is whether there is an identity of issues

between the matters in question. In the state court action, Mr. Unger brought counts for breach of

contract, misrepresentation and fraud, breach of fiduciary duty, and violation of Chapter 93A. The

jury answered "yes" in responding to the question presented in special verdict #9: "Did Lambert

misrepresent to Unger any material facts with respect to his transfer of money to her, upon which

---

If a litigant relies on the trial court judgment for proof of a contested issue and the judgment on that issue is reversed on appeal before judgment is rendered in the litigant's case, the litigant has no remaining proof on the issue. The remedy for this problem, however, is to permit the litigants to reopen their case after a reversal to present their evidence on the issue, or to permit the litigants to submit independent proof on the issue at the same time they argue for the application of collateral estoppel. The remedy is not to refrain from raising collateral estoppel claims until the prior judgment has been affirmed on appeal.

*S. Pac. Comm. Co. v. Amer. Tel. & Tel. Co.*, 740 F.2d 1011, 1018-19 (D.C. Cir. 1984).

misrepresentation Unger reasonably relied to his detriment?" The jury answered "yes" to special

verdict question #7, which concerned Ms. Lambert's ethical duties in light of the jury finding that

there was an attorney-client relationship between Ms. Lambert and Mr. Unger (special verdict #6):

"[D]id Lambert violate any ethical duty (i.e., professional code of ethics for attorneys or other

fiduciary duty) owed by her to Unger with respect to such funds or the proposed use of the funds?"

In sum, the jury (1) found that Ms. Lambert had violated ethical duties she owed to Mr. Unger, (2)

found that Ms. Lambert had misrepresented material facts to Mr. Unger regarding his transfer of

money to her, upon which he reasonably relied to his detriment, and (3) awarded money damages

to Mr. Unger. In presenting its findings on the Chapter 93A count and issuing an order for

judgment, the trial court judge concluded that "these misrepresentations [by Ms. Lambert to Mr.

Unger], as well as her breach of fiduciary duty . . . constituted willful and knowing violations of

G.L. c. 93A."

Massachusetts law recognizes two types of tortious misrepresentation—intentional and

negligent. The key difference between the two is the degree of knowledge the tortfeasor had when

the statement was made. *See Rodowicz v. Mass. Mut. Life Ins. Co.*, 279 F.3d 36, 42 (1st Cir. 2002).

To make out a claim of intentional misrepresentation, the plaintiff must prove that the defendant

made a false representation of material fact with knowledge of its falsity for the purpose of

inducing the plaintiff to act on the false representation, and plaintiff relied on the representation to

his or her detriment. *Int'l Floor Crafts, Inc. v. Adams*, 477 F. Supp. 2d 336, 341 (D. Mass. 2007)

(citing *Barret Assoc., Inc. v. Aronson*, 190 N.E.2d 867, 868 (Mass. 1963). Succeeding on a claim

of negligent misrepresentation requires proof of all these criteria except defendant's knowledge of

the statement's falsity. *Int'l Floor Crafts, Inc.*, 477 F. Supp. 2d at 341.

7

In examining Ms. Lambert's conduct, the state trial judge referred to Ms. Lambert's "false promises" that "effectively played [Mr. Unger] along and induced him to transmit additional funds on frequent occasions to [Ms. Lambert], under false pretenses." The trial judge characterized Ms. Lambert's "misrepresentations" as "willful and knowing violations of G.L. c. 93A." They were thus intentional misrepresentations.

To establish that a debt is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code, the creditor must show the following: (1) the debtor made a knowingly false representation or one made in reckless disregard of the truth; (2) the debtor intended to deceive the creditor; (3) the debtor intended to induce the creditor to rely upon the false statement; (4) the creditor actually relied upon the misrepresentation; (5) the creditor's reliance was justifiable; and (6) the reliance upon the false statement caused damage. *In re Kosinski*, 424 B.R. 599, 612 (B.A.P. 1st Cir. 2010).

The elements under § 523(a)(2)(A) closely mirror the elements required to prove intentional misrepresentation under Massachusetts law. The one area of divergence is the level of reliance required on the part of the creditor. The U.S. Supreme Court, in *Field v. Mans*, "rejected the more demanding *reasonable reliance* standard, in favor of one requiring a creditor to prove that its reliance on the misrepresentation was *justifiable*, in order to avoid discharge of a debt under 11 U.S.C. § 523(a)(2)(A)." *In re O'Brien*, 247 B.R. at 588-89 (citing *Field v. Mans*, 516 U.S. 59 (1995)) (italics in original). The Court in *Field v. Mans* identified the standard of justifiable reliance as "a matter of the qualities and characteristics of the particular plaintiff[] and the circumstances of the particular case" while the standard for reasonable reliance is an "application of a community standard of conduct to all cases." *Field v. Mans*, 516 U.S. at 70 (quoting RESTATEMENT (SECOND) OF TORTS § 545A (1976)).

8

Whereas the distinction between justifiable and reasonable reliance is recognized in the

context of § 523(a), Massachusetts law does not differentiate between the two standards and treats

them interchangeably. *In re Access Cardiosystems, Inc.*, 404 B.R. 592, 648-49 n.82 (Bankr. D.

Mass. 2009) ("Although 'reasonable' and 'justifiable' reliance have been distinguished in other

contexts . . . neither the SJC nor the First Circuit have held that such a distinction obtains under

Massachusetts common law. Rather, both the SJC and the First Circuit have generally used the

terms interchangeably when discussing the reliance element of common-law fraud and negligent

misrepresentation."). By incorporating a standard of reasonable reliance with respect to common

law claims of negligent misrepresentation, intentional misrepresentation, and fraud, the

Massachusetts standard of reliance for these claims is more demanding than the standard, as

articulated in *Field v. Mans*, to be applied to Bankruptcy Code § 523(a)(2)(A). *See In re O'Brien*,

247 B.R. at 588-89 (noting how the U.S. Supreme Court in *Field v. Mans* rejected the "more

demanding" reasonable reliance standard in favor of a justifiable reliance standard for §

523(a)(2)(A) actions). Accordingly, the jury's finding in the state court action of reasonable

reliance by Mr. Unger on Ms. Lambert's misrepresentations satisfies § 523(a)(2)(A)'s less

stringent requirement for justifiable reliance. There is, therefore, an identity of issues between the

state court claims and those asserted here so that the third inquiry required in establishing issue

preclusion has been met.

Turning to the fourth and final inquiry and relying on the previous detailed discussion of

the state court's findings, I find that the issues decided by the state court, especially Ms. Lambert's

intentional misrepresentations on which Mr. Unger reasonably relied to his detriment, were not

merely incidental, but essential to its judgment. It is, therefore, appropriate to give preclusive effect to the state court's findings.

Accepting as preclusive the state court's findings means there are no material facts now in dispute in this adversary proceeding and Mr. Unger is entitled to judgment as a matter of law as to count 1 of his complaint.[2] Having determined that Mr. Unger is entitled to summary judgment under § 523(a)(2)(A), I need not consider whether § 523(a)(6) would also result in nondischargeability of the same debt. Judgment shall enter that Ms. Lambert's debt to Mr. Unger, in an amount determined or to be determined by the state court, is nondischargeable under Bankruptcy Code § 523(a)(2)(A).

At Worcester, Massachusetts this 27th day of October, 2011.

By the Court,

_____
Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:    Kenneth W. Halpern, Kenneth Halpern & Associates
Newton, MA
for Barry Unger

David M. Wardwell
Hanover, MA
for Patricia Lambert

---

[2]    At the hearing on the motion for summary judgment, Ms. Lambert argued that because the trial court's judgment was docketed over a year after the judge made his findings, Ms. Lambert did not have sufficient funds to pay the judgment by the time Mr. Unger obtained an execution against her property. This claim does not, in any way, affect the preclusive effect of the prior judgment and is not relevant to the disposition of this motion.